IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2016 DEC -7 PH 3:05
CLERK'S OFFICE
AT GREENBELT
BY_____ DEPUTY

Tonya A. Mackin

_____

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-against-

Charles Schwab & Co., Inc.
Gregory Matthews

_____

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Complaint for Employment Discrimination**

DKC 16CV3923

Case No. _____
*(to be filled in by the Clerk's Office)*

Jury Trial:  ☐ Yes  ☒ No
*(check one)*

**I.   The Parties to This Complaint**

   **A.   The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

   Name: Tonya A. Mackin
   Street Address: 1464 Key Parkway #302
   City and County: Frederick, Frederick County
   State and Zip Code: MD, 21702
   Telephone Number: (301) 305-5055, (301) 695-4005
   E-mail Address: tonya.mackin@gmail.com

   **B.   The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

   Defendant No. 1

   Name: Charles Schwab & Co., Inc.
   Job or Title (if known): c/o Debra Bayles
   Street Address: Reed Smith, LLP, 101 Second St, Ste. 1800
   City and County: San Francisco, San Francisco
   State and Zip Code: CA, 94105
   Telephone Number: (415) 543-8700
   E-mail Address (if known):

2

Defendant No. 2

Name: Gregory Matthews
Job or Title (if known): Branch Manager
Street Address: 7401 Wisconsin Ave
City and County: Bethesda, Montgomery Co.
State and Zip Code: MD, 20814
Telephone Number: (301) 941-9805, (858) 925-3648
E-mail Address (if known): gregory.matthews@schwab.com

Defendant No. 3

Name: ___
Job or Title (if known): ___
Street Address: ___
City and County: ___
State and Zip Code: ___
Telephone Number: ___
E-mail Address (if known): ___

*(If there are more than three defendants, attach an additional page providing the same information for each additional defendant.)*

## C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is:

Name: Charles Schwab & Co, Inc.
Street Address: 555 Quince Orchard Rd, Ste. 150
City and County: Gaithersburg, ~~MD 2287~~ Montgomery (TAM)
State and Zip Code: MD, 20878
Telephone Number: (301) 947-1100

3

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

- [✓] Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

    *(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

- [ ] Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

    *(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

- [ ] Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

    *(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

- [ ] Other federal law *(specify the federal law)*:

- [ ] Relevant state law *(specify, if known)*:

- [ ] Relevant city or county law *(specify, if known)*:

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.  The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

   ☐ Failure to hire me.
   ☐ Termination of my employment.
   ☐ Failure to promote me.
   ☐ Failure to accommodate my disability.
   ☑ Unequal terms and conditions of my employment.
   ☑ Retaliation.
   ☑ Other acts *(specify)*: Hostile Work Enviornment

   *(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.  It is my best recollection that the alleged discriminatory acts occurred on date(s) May 17, 2012, October 28, 2012, December 27, 2012

C.  I believe that defendant(s) *(check one)*:

   ☑ is/are still committing these acts against me.
   ☐ is/are not still committing these acts against me.

D.  Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

   ☑ race _____
   ☑ color _____
   ☑ gender/sex _____
   ☐ religion _____
   ☐ national origin _____
   ☐ age. My year of birth is _____. *(Give your year of birth only if you are asserting a claim of age discrimination.)*
   ☐ disability or perceived disability *(specify disability)* _____

5

E. The facts of my case are as follows. Attach additional pages if needed.

_See attached_

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

_May 2013_

B. The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☒ issued a Notice of Right to Sue letter, which I received on *(date)* _Sept. 9, 2016_.

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐ 60 days or more have elapsed.

☐ less than 60 days have elapsed.

6

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Because of the discrimination I was subjected to the entire time I was in the position of AFC and under the management of Greg Matthews I am seeking damages. I sought a resolution through Schwab's HR Dept. and they dismissed my pleads for help, contributed to the discrimination & hostility and made my working environment worse. Greg spitefully and intentionally retaliated against me for contacting HR and the EEOC by putting my life in danger. There is no amount of money they can pay me to compensate me for my life. Greg continued the retaliation after my resignation and will continue until he is made to be held accountable for his wrong doings. He has given negative information to employers in an attempt to keep me from getting future employment. I am seeking the maximum $300,000 because Charles Schwab's HR Dept. could have prevented me from going through the unfair treatment I suffered in April 2012 when I asked to be transferred and Andy Fray refused.

7

**VI.** **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**A.** **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: Dec. 7, 20 16

Signature of Plaintiff   Tonya Mackin
Printed Name of Plaintiff   Tonya Mackin

*(If more than one plaintiff is named in the complaint, attach an additional certification and signature page for each additional plaintiff.)*

**B.** **For Attorneys**

Date of signing: _____, 20__.

Signature of Attorney   _____
Printed Name of Attorney   _____
Bar Number   _____
Name of Law Firm   _____
Address   _____
Telephone Number   _____
E-mail Address   _____

8

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

Tonya Mackin, :

1464 Key Parkway

Frederick, Maryland 21702

Plaintiff, v. :

                Civil Action No:

Charles Schwab & Co., Inc.,

c/o Debra Boyles

101 Second Street

Suite 1800

San Francisco, CA 94105

Defendant

DKC 16CV3923

## Body of the Complaint

From the beginning of my role as the Associated Financial Consultant (AFC) my coworkers the Financial Consultants (FC), Jim Edwards, David Nau, John Stanton, and Kil Chang, refused to work with me. When I uncovered a lead for $250,000 or more I had to refer the client to one of the FC's because all clients with $250k or more in assets would be assigned to an FC. (the AFC worked with clients who had less than $250k) The Financial Consultants refused to accept the leads or would often not follow up with the clients. Their reasoning was because they thought they were doing my job. Some of the statements that was said to me by the FC's when I tried to give them the leads were: "You just don't want the responsibility", "I have my own clients I don't need anymore" and "I'm not doing the work so you can get the credit." I complained multiple times to Brett Chelf the former manager about this prior to Greg Matthews coming to the branch with no results. The only FC that would work with me is Carl Scoglin. (That is because Carl was on his second quarter in the red and on written warning of termination for poor job performance and about to be fired) Carl was eventually offered a better position in Florida even though he had performed poorly in his previous role as FC. The following are examples of discrimination and hostile work environment I was subjected to at the Gaithersburg, MD branch.

- John Stanton - F/C that makes the inappropriate, sometimes racially toned comments. ( ex. today the CSS , who is a black male, is going to NY for the holiday, John's comments to him was have fun & don't go to jail ) John & I have had a number of discussions about race because of some of his views & comments, mostly around politics.

- Jim Edwards - F/C I had the discussion with regarding he & the other F/C's not understanding my role and me taking all the leads and clients from them. He & the others seems to think it is my fault they are not doing their jobs and are in the red. He also made an inappropriate comment to a client ( Chrys Wilson, a black woman) while she was having a discussion with Kil Chang. She had been his client at one time and was unhappy with him and requested a new consultant, I think she submitted her complaint in writing which would be on his U4. She was reassigned to Carl, then Kil after Carl transferred to FL.  His comment was something to the tune of, you have been to every consultant in the branch. ( may not have been a problem if he had a good relationship with her )

- Dave Nau  ( who resigned )  refused to take leads from me because he thought he was doing my job, until he was on verbal warning and under the threat of being fired. He would also, in my presence, refer to the president as " that boy "  which is a racist term often used to disrespect black men.

- Kil Chang - F/C  in regards to taking leads from me said in a meeting , he doesn't need anymore clients.

Tonya Mackin: 1464 Key Parkway #302, Frederick, MD 21702

- **Thursday May 17 we had a workshop at 6pm, I had to order the food, prepare for the workshop, give the workshop and clean up afterwards. Greg stayed everyone else went home comments / actions by Greg which were racial or gender based : " all of your coworkers are against you",   I was told not to have advice discussion, but do operational ( paper work) work only ( even though I had to get licensed to sell fee based advised solutions as part of taking this role & this is part of what I will be evaluated on ) , the supposed reason was because we have 1 CSS in Gaithersburg. The Bethesda branch is now in the same situation but I'm positive Ari ( a white male ) was not told to just do paper work and refer all advice discussions to the F/C's . I was told by Greg prior to hiring him, the AFC in BE will be allowed to have advice discussions.** I am an Associate Financial Consultant and there is an Operations Manager in Bethesda who use to come to our branch twice a week  ( when the CSS in Gaithersburg was out and the Bethesda Operation Manager was here I was made to stay after 5pm and do cashiering while the Operations Manger got to leave at 5 pm) . I would still like an explanation as to why the Operations Manager was not the back up for the CSS in Gaithersburg when she was here instead of the AFC, she was the back up for the CSS in Bethesda when he was out when they had a 2nd CSS.

In addition to the uncooperative Financial Consultants I had to often do the job of the Client Services Specialist (CSS) Darrell Turner. (I was the CSS at the branch for 3 yrs. before I took the position as AFC) Darrell never became proficient at his job as CSS nor was he really trying. He would spend much of his day on his cellphone taking personal calls. He would even ignore clients while on a call and I would have to stop what I was working on and help the client. He often made careless errors such as depositing checks into the wrong account. He once deposited a $100k check in the wrong account and I had to correct it.  Some clients refused to work with him and would come to me, and the consultants would bring work to me because they did not trust Darrell to get it done or to do it correctly. Clients complained, the financial consultants complained and I complained about Darrell's poor performance but again nothing was done. I even offered to show Darrell how to do thing but he refused the help.

I was not given very much support from the beginning as the AFC but I took the initiative and made an appointment with Antwon Harris, an FC in the DC branch, to get help with my new role. I also enrolled myself into the AAMS program. Brett Chelf did not set up an appointment for me to shadow other AFC's that did not happen.  Despite the lack of support and hostile work environment I did well in the role. ( I have attached a copy of the 1st quarter 2013 sales results for the AFC's you will see my number are comparable to others and in some cases better contrary to what Schwab is stating I was doing my job.)

When Greg took over as manager, the Gaithersburg and Bethesda branches were in chaos. There were weeks between Brett Chelf leaving and Greg Matthews starting. During those weeks much of the responsibility for keeping the branch running smoothly fell on me. In addition to Brett Chelf leaving, two of the FC's left. David Nau resigned and Carl Scoglin (a white male) was given a promotion to Portfolio Manager in the Private Client Group in Florida, this was despite the fact he was on his 2nd quarter in the red and on written warning of termination for poor job performance as a Financial Consultant. Their clients were calling me for help, the FC's were coming to me for help, I was also trying to do my AFC work, and cover the CSS role at times. I

Tonya Mackin: 1464 Key Parkway #302, Frederick, MD 21702

didn't have a problem with Greg because I didn't know him. I was hoping him finally coming would make things better at the branch and less stressful for me but instead things got worst.

Over half of the original staff in the Bethesda branch resigned after Greg became manager and there were two vacancies (Carl & David) in the Gaithersburg branch as well. When Greg started to interview for the vacant positions he never interviewed nor hired any minorities, he hired all white males.

I will not address number 4 of Schwab's response because this was all addressed in my original complaint to the EEOC in 2012 and is not relevant to this case of retaliation because it has already been decided on, October 2012. This is part of the smoke screen to take your attention off of the behavior of Schwab and Greg Matthews.

On November 23, 2012 I met with Sadie Bone. This was her 3rd visit to the branch to try to finalize some accounts she shared with her now deceased mother and take care of some other administrative items. She also had some checks returned because they were written off of the account that was closed during her 1st visit to the Gaithersburg branch by Kil Chang. When the checks were returned she called Kil Chang and left messages on his voice mail, messages with Darrell the CSS and she even called the 800 customer service number to make a complaint. Greg would have been informed of a complaint made through the customer service line. He never returned her call nor did Greg follow up on her complaints about Kil. She came back to the branch and met with Jim Edwards, she complained about how rude he was to her and how he talked down to her. Jim has had several complaints from female clients about his animosity and rudeness toward women. Ms. Wilson, Ms. Weaver and Ms. Bogart are just a few of the female clients that complained about Jim prior to Ms. Bone yet he has never been written up. Ms. Wilson sent a written complaint which goes on his permanent record and can be found on his U4 with FINRA. Once again Ms. Bone called several times to complain about Jim with no results.

When I met with Ms. Bone I had to call several departments to try to get the closed account temporarily reopened to clear her checks and do other administrative items. Ms. Bone was advised the account was only being opened temporarily to clear her checks then it would be closed again and she would need to use the new account. I sat with Ms. Bone and worked on her accounts for an hour. The branch closed early that day for Thanksgiving, Darrell, John, Jim and Kil all left at 2pm, but I did not get to leave until 4pm because I stayed to help her then had to close up afterwards. While I worked on her accounts I had to call several internal departments and outside agencies for assistance. She talked about her experience with Kil and Jim while I worked on her accounts, she also talked about her job that she was unhappy with, her strained relationship with her brother, and many other things. I apologized to her for how she was treated by Jim and Kil, I told her I understood how she felt because I have been treated that way myself before. I did not talk about my job or disliking my job with her because I was too busy making phone calls, filling out forms, and printing replacement checks for the funeral home and florist to do much talking.

On December 27, 2012 Ms. Bone called me and said more checks had been returned. I reminded her she was not supposed to use that account because it was only opened temporarily to clear the items back in November. I asked her how many checks did she write and she replied" I don't know!" I asked her the total amount of the checks she wrote and she again stated "I don't know!" I then told her to get her checkbook and I would tell her where to go on the website to find the checks that have cleared and she has the notice of the ones that are being returned so she could

Tonya Mackin: 1464 Key Parkway #302, Frederick, MD 21702

figure out what was still outstanding. She wrote checks on a closed account and became angry because I could not fix it. That is why she made the complaint and made up lies. If all she said in her complaint was true why wait a month to make a complaint why did she not call the next business day (11/28/2012) or call the 800 customer service number (they are open 24 hrs. a day 7 days a week)? She waited until 12/27/2012 after she spoke with me about the returned checks to call and make a complaint, if I had been able to take care of her returned checks there would not have been a complaint. Greg knew this but saw the complaint as an opportunity to get back at me for filing a complaint against him and Schwab. This conveniently happened 2 months after my original complaint with the EEOC was dismissed.

At that time I had been with the Charles Schwab Corporation for 5yrs without a complaint. The fact that my first client complaint was a written warning and they were going to withhold my sales bonus that I earned for my first complaint seemed excessively punitive. Especially when neither Jim Edwards nor Kil Chang were even spoken to about her complaints against them. When I met with Greg to discuss the warning and have a conference call with HR that is when I mentioned to the representative that this was clearly retaliation and I am not going to sign the warning. Days after the call and discussion with HR I received the settlement offer. If this were truly a severance package and not a settlement offer, why not offer it to me after the original complaint and investigation back in 2012? Why wait until I brought the retaliation to HR's attention to make the offer? Why have a statement in the release form releasing Schwab of any future actions by their representatives?  The statement that Greg did not know about the original EEOC dismissal was also untrue. I brought that up to HR, with Greg present, as part of the reason why the written warning took place he knew the complaint was dismissed in October so now he could retaliate because the EEOC's investigation was over.

Schwab also made false allegations that I did not get along with my coworkers. Jim Edwards, John Stanton and Kil Chang would often come to me for administrative help because they did not trust Darrell and they also did not want to ask Kay Nesmith (a white woman) because she was rude, and condescending. Kay worked for Schwab for 25 years she was rude to clients, coworkers in the branches and the service centers but she was given promotions. If I did not get along with my coworkers why did they continue to come to me for help and refuse to go to Kay or Darrell?

The attorney for Schwab did not attempt to address the second part of my retaliation complaint, the branch closing. On October 28, 2012 Greg sent a text message to every employee in the Gaithersburg and Bethesda Branches regarding the branch closure on October 29, 2012 except me. I received a text message from 2 coworkers stating they were not going to be at work on the 29th because the metro system was not going to be operating because of Super Storm Sandy. I drove to work on the 29th in a storm only to find an email from Greg stating the branch was closed. I did not have access to company email from home only FC's and managers have access, Greg was aware of this. He intentionally omitted sending me the text message so that I would drive to work in the storm to find the branch closed. His need for revenge and retaliation put my life in danger. I sent him an email telling him I did not get his text last night and was at work and he did not respond.

Greg Matthews did retaliate against me for filing my original complaint in 2012. He started by excluding me from an important text message about the branch closure due to a storm, putting my life and safety at risk. Two months later he uses excessive punitive measures in the form of a

Tonya Mackin: 1464 Key Parkway #302, Frederick, MD 21702

written warning and withholding my sales bonus for a customer complaint but refused to even address my coworkers who also received a complaint from the same client which was ignored by Greg. I am asking that you please review the true facts of the retaliation complaint and not let Schwab's deception take your focus off the real issues.


Tonya Mackin

1464 Key Pkwy #302

Frederick, MD 21702

(301) 305-5055

*Tonya Mackin* 12/7/16

*Tonya Mackin* 12/7/16


Tonya Mackin: 1464 Key Parkway #302, Frederick, MD 21702